**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

JAMIE LEE                              *
ADC #111178,                           *
                                       *
                 Petitioner,           *
v.                                     *               No. 4:20-cv-01132-JJV
                                       *
DEXTER PAYNE, Director,                *
Arkansas Division of Correction,       *
                                       *
                 Respondent.           *

<u>**MEMORANDUM AND ORDER**</u>

**I.      INTRODUCTION**

Petitioner Jamie Lee, an inmate at the Varner Supermax Unit of the Arkansas Department

of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. (Doc. No. 1.) Mr.

Lee was convicted by a jury in Miller County, Arkansas, of capital murder and first-degree battery.

(Doc. No. 17, Exhibit E at 1) He was sentenced to a term of life imprisonment without parole plus

an additional eighty years to run consecutively. (*Id.*) The Arkansas Supreme Court summarized

the basic facts of the case as follows:

> The events leading up to the criminal charges and convictions all occurred
> at the Ace of Clubs nightclub in Texarkana in the early morning hours of October
> 6, 1996. According to witnesses for the State, at about 3:00 a.m. that morning, the
> rap song "Bow Down" was playing in the nightclub for a crowd of patrons who
> were young men and women. The rap song deals with two rival gangs–one on the
> west side and one on the east side. The song depicts the west side gang as having
> more power. Some of the male patrons at the nightclub were members of rival gangs
> in Texarkana, Arkansas and Texarkana, Texas. Jamie Lee was a member of a
> Texarkana, Texas gang.
>     During the playing of "Bow Down," State witnesses testified that Lee stood
> on a chair and began acting out the rap song, while making gestures that some
> considered gang signs. His actions were taken by Texarkana, Arkansas gang
> members as being a taunt and a challenge, because he identified himself with a west
> side gang. Fighting broke out, and at some point Lee was handed a gun. According
> to several state witnesses, the gun was given to him by Demetric Williams, and Lee

1

opened fire. Danyon Green was shot and killed, while Kinthun Arnold, Johnny Hardy, Charvez Williams, and Trolaurice Walker were wounded. Lee then ran out of the nightclub. According to one State witness, on his way out, Lee stopped and "clicked" his gun at the head of Fred Bradley, who was under a table.

*Lee v. State*, 340 Ark. 504, 508 (2000).

On March 3, 2000, the Arkansas Supreme Court affirmed Mr. Lee's convictions and sentences. (*Id.*). On March 21, 2000, the Arkansas Supreme Court issued the direct-appeal mandate. (Doc. No. 17, Exhibit C at 12.)  On May 20, 2000, the 60-day deadline for filing a petition for postconviction relief under Ark. R. Crim. P. 37 passed. *See* Ark. R. Crim. P. 37.2(c)(ii)(1999). On June 19, 2000, the 90-day deadline for filing a petition for a writ of certiorari in the United States Supreme Court passed. *See* Sup. Ct. R. 13.1. On July 11, 2011 Mr. Lee filed a petition for postconviction relief under Ark. R. Crim. P. 37 in the circuit court. (Doc. No. 17, Exhibit E at 1-7.) On July 26, 2011, the circuit court found Mr. Lee's Rule 37 petition untimely and dismissed it for lack of jurisdiction. (*Id.* at 8-9). On August 8, 2011, Mr. Lee filed a petition in the Arkansas Supreme Court seeking to (1) reinvest jurisdiction in the circuit court to file a petition for writ of error *coram nobis*, (2) leave to file a belated Rule 37 petition, and (3) a recall of the direct-appeal mandate. (Doc. No. 17, Exhibit F at 1-141.) On August 15, 2011, the Arkansas Supreme Court denied Mr. Lee's petition. (*Id.* at 142-146.) On April 1, 2013, Mr. Lee filed another Rule 37.1 petition in the circuit court. (Doc. No. 17, Exhibit E at 11-62.) On April 29, 2013, the circuit court found Mr. Lee's second Rule 37 petition untimely and dismissed it for lack of jurisdiction. (*Id.* at 64-66.) On April 4, 2017, Mr. Lee filed a petition for executive clemency, seeking a pardon and restoration of his right to possess firearms. (Doc. No. 17, Exhibit G at 29.)

In the Petition for Writ of Habeas Corpus now before the Court, Mr. Lee raises several claims for relief. (Doc. No. 1.) He alleges (1) the State violated *Napue v. Illinois*, 360 U.S. 264 (1959), by knowingly allowing false testimony by its witnesses to obtain a guilty verdict against

Mr. Lee; (2) new evidence, in the form of an affidavit, establishes that witness Carlton Layton committed perjury; (3) Mr. Lee's trial violated the *Duren v. Missouri*, 439 U.S. 357 (1979) fair cross section requirement; (4) the State violated *Chessman v. Teets*, 354 U.S. 156 (1957) due to alleged errors and omissions in the trial transcript; (5) violation of due process due to the state trial court's failure to enforce the sequestration-of-witnesses rule under Ark. R. Evid. 615; (6) the state trial court violated due process by admitting prejudicial testimony of Mr. Lee's alleged past acts and crimes; (7) sufficiency of the evidence as to Mr. Lee's capital murder conviction; (8) ineffective assistance of counsel; (9) actual innocence; (10) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963); (11) the state trial court lacked jurisdiction to try Mr. Lee. (Doc. No. 1, at 8-29.) Respondent contends Claims 3-8, 10, and 11 are time-barred by 19 years and Claims 1, 2, and 9 are time-barred by at least two years; Mr. Lee's petition does not satisfy the *Perkins/Schlup* actual innocence standard; and Mr. Lee's claims are all procedurally defaulted; (Doc. No. 17, at 9, 19, 27.) After careful consideration of the Petition, Response, and Reply, I find the Petition must be dismissed with prejudice.

## II.   ANALYSIS

### A.  Time Bar

Mr. Lee's Petition is untimely based upon the one-year period of limitation imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Title 28 U.S.C. § 2244(d)(1) and (2) impose a one-year period of limitation on habeas corpus petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

### 1. Claims 3-8, 10, and 11: Statutory Clock Began on June 19, 2000

#### a. Claims 3-8 and 11

Mr. Lee's Claims 3-8 and 11 are governed by subsection (A) of 28 U.S.C. § 2244(d)(1). Since Mr. Lee did not seek certiorari review of his direct appeal in the United States Supreme Court, the statutory clock started 90 days after the mandate on direct appeal was issued – June 19, 2000. *See* Sup. Ct. R. 13.1 (setting 90-day filing deadline for filing a petition for a writ of certiorari from judgment of a state high court.) Therefore, Mr. Lee's Claims 3-8 and 11 are well beyond the one-year period of limitation imposed by AEDPA and are not cognizable in federal court.

#### b. Claim 10

In Claim 10 Mr. Lee alleges the State violated *Brady v. Maryland*, 373 U.S 83 (1963) by their failure to disclose a supplemental report generated by Detective Hudson. (Doc. No. 12, at 27.) The report is part of the Texarkana police department's case file on the Ace of Clubs shooting. As such, once there was no longer an "open and ongoing investigation" into Mr. Lee's case, the file would have been subject to disclosure under the Arkansas Freedom of Information Act. *See*

*Dep't of Ark. St. Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, 516 S.W.3d 265 (2017). The *Keech Law Firm* case held that the FOIA contains a disclosure exemption for "undisclosed investigations by law enforcement agencies of suspected criminal activity" and this applies only to "ongoing investigations." *Id.* at 267 (quoting *McCambridge v. City of Little Rock*, 298 Ark. 219, 233 (1989)). Upon the conviction of Mr. Lee by the state trial court, there was no longer an ongoing investigation into the shooting at the Ace of Clubs. Therefore, Mr. Lee's Claim 10, has the same start of the statutory clock as Claims 3-8 and 11; June 19, 2000. Thus, Mr. Lee's Claim 10 is beyond the one-year period of limitation imposed by AEDPA.

### 2.  Claims 1, 2, and 9: Statutory Clock Began on February 26, 2017

Mr. Lee's Claims 1, 2, and 9 allege accordingly that State's witnesses committed perjury and Mr. Lee is actually innocent. These claims are supported by the affidavits in the Addendum (Doc. No. 8.) The statute of limitations began for these claims on the earliest date that Mr. Lee could have obtained the facts underlying the claims in the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). The statute "does not require the maximum feasible diligence, only due, or reasonable, diligence." *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) (internal citations omitted). Further, the statute runs from the time a petitioner learns of the factual predicate – not from evidence found later to support it. *See Rues v. Denney*, 643 F.3d 618, 622 (8th Cir. 2011).

### a.  Marlon Burks's Affidavit

The factual predicate for the above claims rests on the affidavits provided in the Addendum (Doc. No. 8.) Marlon Burks signed an affidavit less than a month after Mr. Lee's conviction stating that he never saw Mr. Lee with a gun. (Doc. No. 8, at 7.) This affidavit is in line with the general defense theory presented at Mr. Lee's trial; he did not have a gun on the night of the shooting.

Given Mr. Burks's willingness to provide an affidavit only one month after Mr. Lee's conviction, one might reasonably assume that Mr. Lee would use due diligence to track down any other individuals willing to provide testimony to help with his case. Mr. Lee's Petition provides no evidence to support that he used reasonable diligence to track down other individuals at the time willing to provide affidavits to help with his case, and thus, he fails to meet the due diligence burden required by 28 U.S.C. § 2244 (d)(1)(D).

### b. Change.org Petition

In 2012 it appears there was a Change.org petition created to support Mr. Lee's claim of innocence. (Doc. No. 17, Exhibit G at 199-257.) As of 2012, the public was invited to comment and leave messages of support for Mr. Lee. An entry on September 3, 2012 reads "I witness[ed] the shooting and Mr. Lee wasn't the shooter" and another on October 2, 2012 reads "I remember the night in question, and he was wrongly convicted". (*Id.* at 226, 219.) Nothing in Mr. Lee's Petition suggests that he ever followed up on the leads provided by the comments on the Change.org petition. This certainly does not meet the due diligence burden stated above.

### c. Recantation Affidavits

Mr. Lee received the first affidavit from a witness recanting their trial testimony in 2015. (Doc. No. 8, at 5.) This affidavit was authored by Fred Bradley. (*Id.*) Mr. Lee was not required to wait until he had every ounce of evidence available before asserting his habeas claim. Therefore, even though other affidavits were received in the following years, the statute of limitations began on the date he received the first recantation affidavit, May 18, 2015. Even if this Court were to give Mr. Lee the benefit of the doubt and run the statute of limitations from the last received recantation affidavit, February 26, 2017, the one-year AEDPA requirement is still violated.

### 3. Period of Tolling

28 U.S.C. § 2244 (d)(2) states that the statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court. Mr. Lee's 2011 and 2013 Rule 37 petitions were untimely and do not qualify as "properly filed" under 28 U.S.C. § 2244(d)(2). *See Allen v. Siebert*, 552 U.S. 3, 7 (2007). Mr. Lee's 2011 Rule 37 petition in the Arkansas Supreme Court, encompassing the instant Claims 3-8 and 11, qualifies as an application for State collateral relief. However, the filing had no effect because the statute of limitations had already run. *See Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001). As for the remaining claims, Mr. Lee did not file anything in state court from the last possible date for the start of the statutory clock, February 26, 2017, and the filing of the instant petition. Therefore, statutory tolling does not apply.

A careful review of the Petition fails to show any support for equitable tolling. Equitable tolling is only appropriate when a petitioner shows (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in the way of his filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Mr. Lee has not made either showing.

### B. Actual Innocence

Mr. Lee alleges actual innocence in Claim 9. "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggen v. Perkins*, 569 U.S. 383, 392 (2013). This rule, known as the fundamental miscarriage of justice exception, "is grounded in the 'equitable discretion' of the habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). The United States Supreme Court has characterized tenable actual-innocence gateway pleas as "rare." *Id.* at 386. First, a petitioner who raises a gateway claim of actual innocence must present

new and reliable evidence that was not presented at trial. *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997). Evidence is "new" if it was not available at the time of trial through the exercise of due diligence. *Nooner v. Hobbs*, 689 F.3d 921, 934 (8th Cir. 2012) (internal citations omitted). Next, "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Additionally, to establish a claim of actual innocence, the petitioner "must show factual innocence, not simply legal insufficiency of evidence to support a conviction." *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).

### 1.   Recantation Affidavits

Mr. Lee has produced recantation affidavits as new evidence not available at the time of trial. (Doc. No. 8.) However, as discussed above, these affidavits were not obtained with due diligence by Mr. Lee. *See* discussion *supra* Section II.A.2.c. Moreover, the earliest recantation was dated in 2015, making his federal petition years past the deadline under 28 U.S.C. § 2244(d)(1)(D).

Even giving Mr. Lee the benefit of the doubt, recantation affidavits are strongly disfavored as reliable evidence. *Herrera v. Collins*, 506 U.S. 390, 417-418 (1993). These types of affidavits reveal perjury of one sort or another. Plainly, the affiant was either lying at the time of trial or is lying now in the recantation. These affidavits are "obtained without the benefit of cross-examination and an opportunity to make credibility determinations . . . and therefore fail to provide a convincing account" of the crime. *Id.* at 392.

I find Mr. Lee's claim of actual innocence unavailing. Even taking these new affidavits as true, I do not find it is more likely than not no reasonable juror would have convicted him. At trial, there were seven eyewitnesses for the State. To date, only two have recanted their testimony. This

is hardly enough to satisfy the high hurdle of actual innocence. Further, the jury at Mr. Lee's trial weighed the credibility of every witness's testimony. They came to the reasonable conclusion that Mr. Lee was guilty. For these reasons, Mr. Lee fails to overcome the burden propounded by *McQuiggen v. Perkins*, 569 U.S. 383 (2013) and *Schlup v. Delo*, 513 U.S. 298 (1995).

### C.  Procedural Default

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see also* 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")).  The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"). In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *Murphy*, 652 F.3d at 849 (quoting *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)).

A state inmate procedurally defaults a claim by violating a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court.

9

*Id.* If it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991). That is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent.

### 1. Claim 8: Ineffective Assistance of Counsel

All of Mr. Lee's ineffective assistance claims are procedurally defaulted. His first claim – regarding trial counsel's failure to object to "unsubstantiated allegations of other bad acts or wrongs allegedly committed by Mr. Lee" – was not raised in the Rule 37 proceedings. (Doc. No. 1, at 22.) Even so, had the issue been raise at the Rule 37 proceedings, it would have been denied as conclusory. *See, e.g., Dennis v. State*, 2020 Ark. 28 ("[C]onclusory statements that counsel was ineffective cannot be the basis for postconviction relief.") (internal citations omitted); *accord, e.g., Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance).

Mr. Lee's second claim – trial counsel "left a lot of blanks on the pretrial Motion to Prohibit the Use of Voter Registration As A Means of Selecting a Jury Panel" – is procedurally defaulted as well. Mr. Lee has presented no evidence of systemic exclusion of African Americans from the

venire at his trial. This "precludes a finding of prejudice springing from ineffective assistance based on the failure to raise or preserve the issue of systemic exclusion." *Wharton-El v. Nix*, 38 F.3d 372, 377 (8th Cir. 1994); *see also Thomas v. Payne*, 960 F.3d 465, 475 (8th Cir. 2020) (rejecting *Duren* based ineffectiveness claim because "Thomas got a constitutionally adequate jury" and was not, accordingly, prejudiced). An attorney is not ineffective for failing to raise a meritless motion. *See Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

### 2. Claims 1-7, 9-11

The remainder of Mr. Lee's claims are also defaulted. For Mr. Lee to demonstrate cause, he must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). At a minimum, he must show that "'something *external* to him . . . caused the procedural default.'" *Ivy v. Caspari*, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). I find nothing in Mr. Lee's record that satisfies the *Murray* and *Ivy* standard to show cause. I therefore find that Claims 1-7 and 9-11 are inexcusably procedurally defaulted.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A court may only issue a certificate of appealability "if the applicant has made a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In this case, Mr. Lee has failed to make a showing that his constitutional rights were violated. Therefore, no certificate of appealability should be issued.

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Mr. Lee § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

2. A certificate of appealability will not be issued.

SO ORDERED this 2nd day of February 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE